# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE; and MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | Civil Action No. 1:20-cv-11283-ADB |

**[PROPOSED] BRIEF OF 26 CITIES, TOWNS, AND COUNTIES AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii
STATEMENT OF INTEREST ................................................................................................ 1
INTRODUCTION .................................................................................................................... 4
ARGUMENT ............................................................................................................................ 6
   I.   Plaintiffs Are Likely to Succeed on The Merits Because Defendants' Directive Does Not Consider Either The Harms That Would Be Imposed on *Amici* or *Amici's* Reliance Interests on The Existing Covid-19 Exemption. ........................... 6
      A.   Defendants' action fails to acknowledge the impact of the directive on public health, which is a core mission of local government. ................................ 6
      B.   Defendants' action fails to acknowledge economic impacts to local government at a time when municipal budgets are experiencing severe shortfalls. ...................................................................................................................... 9
CONCLUSION ....................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Cases**

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
    140 S. Ct. 1891 (2020) .................................................................................. 6, 11

*Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016) .............................. 6

*Michigan v. E.P.A.*, 135 S. Ct. 2699, 2706 (2015) ........................................................ 6

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29, 43 (1983) ......................................................................................... 6

**Other Authorities**

Blake Gumprecht, *The American College Town*,
    Amherst: University of Massachusetts Press, 2008. ............................................ 4

John Bowden, *Cuccinelli Says Rule Forcing International Students To Return
    Home Will 'Encourage Schools To Reopen,'* The Hill, July 7, 2020,
    *available at* https://perma.cc/6AB7-379Q ......................................................... 3, 11

Lemuel Shattuck, *Report of the Sanitary Commission of Massachusetts - 1850*,
    Cambridge: Harvard University Press; 1948 (Facsimile Reprint) ......................... 7

NAFSA, *Economic Value Report for 2019*, November 18, 2019,
    *available at* https://perma.cc/H9P9-UBGQ ........................................................ 10

**Rules**

Immigration and Customs Enforcement, *Broadcast Message: Coronavirus Disease
    2019 (COVID-19) and Potential Procedural Adaptations for F and M
    nonimmigrant students,* March 9, 2020, *available at*
    https://www.ice.gov/doclib/sevis/pdf/bcm2003-01.pdf ............................................ 5

Immigration and Customs Enforcement, *COVID-19: Guidance for SEVP
    Stakeholders,* March 13, 2020, *available at*
    https://www.ice.gov/sites/default/files/documents/Document/2020/Coronavirus%20
    Guidance_3.13.20.pdf ............................................................................................ 5

**STATEMENT OF INTEREST**

The Cities of Los Angeles and Boston, together with the City of Albany, New York; the City of Albuquerque, New Mexico; the City of Alexandria, Virginia; the City of Austin, Texas; the City of Berkeley, California; the City of Cambridge, Massachusetts; the County of Cameron, Texas; the City of Chicago, Illinois; the City of Columbus, Ohio; Cook County, Illinois; the City Dayton, Ohio; the Town of Durham, New Hampshire; the City of Hartford, Connecticut; the City of Iowa City, Iowa; the City of Las Cruces, New Mexico; the City of New York, New York; the City of Oakland, California; the City of Pittsburgh, Pennsylvania; the City of Sacramento, California; the City of Saint Paul, Minnesota; the City of Seattle, Washington; the County of Santa Clara, California; the City of Amherst, Massachusetts; and the City of Somerville, Massachusetts respectfully submit this brief, as *amici curiae*, in support of Plaintiffs' Motion for a Preliminary Injunction.

*Amici* hail from across the country: from rural communities and suburban areas to industrial cities and large, urban metropolises. *Amici* also represent a cross-section of local jurisdictions with a spectrum of economic, political, and cultural perspectives. And *amici* are home to colleges and universities of every form and type, from large state colleges to private research institutions to local technical schools.

This matter will have a direct and deep impact on *amici* and their communities. First, *amici* care deeply about their foreign-born populations (some of the largest in the country) and have a strong interest in protecting the rights and well-being of *all* students and their families as they seek to complete their higher

1

education in the United States. These interests are reflected in, for example, the adoption of welcoming-city ordinances and policies, the provision of healthcare and public health services to all, especially during the current pandemic, and the provision of funds for immigration legal services.

Second, the international students enrolled in *amici's* educational institutions make significant economic contributions to *amici's* communities. There are more than 20,000 international students enrolled in colleges and universities located in the City of Los Angeles for the fall. Between Boston, Cambridge, Somerville, and surrounding suburban areas, there are tens of thousands more. All of those students will be affected by the outcome of this matter, and all of them are part of the economic engine fueling *amici's* communities. For example, in New York City, international students contribute more than $3 billion in economic value annually. In Pittsburgh, one job is created for every two international students enrolled in the city's colleges and universities. And in Iowa City, the 2,500 resident international students at the University of Iowa contribute millions of dollars to the city's economy annually.

Finally, in the current public health crisis, *amici* have a critical interest in close public-health coordination and cooperation between local governments and their colleges and universities—and in avoiding harmful federal interference in it. The Department of Homeland Security (DHS) and Immigration and Customs Enforcement's (ICE) rash decision to rescind the COVID-19 exemption for international students is likely to complicate and harm public health efforts in

*amici's* communities.  It is likely to send students threatened with removal into the shadows, where public health efforts will not reach them, in the midst of a pandemic. It also threatens to force colleges and universities to choose between rushing to open their campuses to protect their international students from deportation and respecting the orders and guidance of *amici's* public health officers and the universities' own judgment of what protects *amici's* communities. Sadly, such conflicts might just be Defendants' goal. According to Department of Homeland Security Acting Deputy Secretary Kenneth Cuccinelli, pursuing the reopening of colleges and universities is *the* reason for the proposed rule.[1] Damn the torpedoes, in other words, full speed ahead.

*Amici* include some of the jurisdictions that have suffered the most in our current public health emergency. The proposed rule only promises to make matters worse. We respectfully offer this brief to highlight the interests that *amici* have in the proposed rule and the significant impacts to local governments that DHS and ICE have failed to consider.

---

[1] John Bowden, *Cuccinelli Says Rule Forcing International Students To Return Home Will 'Encourage Schools To Reopen,'* The Hill, July 7, 2020, *available at* https://perma.cc/6AB7-379Q ("Bowden Article").

**INTRODUCTION**

College towns are an American phenomenon. No other country in the world has so many municipalities so uniquely intertwined with one or more colleges and universities. As Blake Gumprecht, journalist and former chair of the Department of Geography at the University of New Hampshire in Durham, New Hampshire, writes, college towns are "part of what makes life different in these United States," because they are "distinctive, memorable, lively, and ever-changing."[2]

At their cores, local governments exist to provide for the health (*e.g.* public health services during a pandemic) and welfare of their residents, business, and institutions. As local governments with colleges and universities within our borders, *amici* share a common interest in building "distinctive," "memorable," and "lively" communities where all student and community members, regardless of citizenship or nationality, are healthy, safe, and empowered to participate in civic life.

*Amici* also have a common interest in realizing the tangible cultural and economic benefits that flow from colleges and universities to local governments. The U.S. student visa system, managed in part by ICE's Student and Exchange Visitor Program (SEVP), directly benefits *amici*, by allowing international students to attend the colleges, universities and trade technical schools in our communities.

The current public health crisis has forced most of *amici's* colleges and universities shut down their campuses and cancel on-site classes and teaching. They have done so, in many instances, as a direct result of *amici's* mandatory

---

[2] Blake Gumprecht, *The American College Town*, Amherst: University of Massachusetts Press, 2008.

health orders requiring businesses to close and residents to isolate and socially distance to reduce community spread of COVID-19.

On March 9, 2020, recognizing the extraordinary circumstances presented by this public health crisis, ICE issued guidance concerning F-1 and M-1 student visas. Specifically, ICE stated that international students studying in the U.S. could maintain their visa status even if their schools transitioned to online learning. Under the guidance, online classes would count toward fulfilling a student's "full course of study" despite the "limits" placed on online learning in 8 C.F.R § 214.2(f)(6)(i)(G) and 8 C.F.R. §214.2(m)(9)(v).[3] Four days later, ICE reiterated the guidance, noting that while this COVID-related safe harbor provision for online classes was temporary, it would remain "in effect for the duration of the emergency."[4]

But only a few months later, as COVID-19 infections continued to climb, ICE announced an unexpected and total reversal of this guidance—one that tears at the fabric of our communities. The new directive, issued on July 6, 2020, undermines our shared interest in empowering all residents to participate in our communities and threatens the health and safety of our residents during a pandemic. But DHS

---

[3] Immigration and Customs Enforcement, *Broadcast Message: Coronavirus Disease 2019 (COVID-19) and Potential Procedural Adaptations for F and M nonimmigrant students,* March 9, 2020, *available at* https://www.ice.gov/doclib/sevis/pdf/bcm2003-01.pdf.
[4] Immigration and Customs Enforcement, *COVID-19: Guidance for SEVP Stakeholders,* March 13, 2020, *available at* https://www.ice.gov/sites/default/files/documents/Document/2020/Coronavirus%20Guidance_3.13.20.pdf.

and ICE did not even acknowledge these harms in issuing the directive, much less justify its action in light of them. As a result, this Court should grant Plaintiffs' motion and enjoin the implementation of the ICE directive.

## ARGUMENT

**I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS BECAUSE DEFENDANTS' DIRECTIVE DOES NOT CONSIDER EITHER THE HARMS THAT WOULD BE IMPOSED ON *AMICI* OR *AMICI'S* RELIANCE INTERESTS ON THE EXISTING COVID-19 EXEMPTION.**

"Federal administrative agencies are required to engage in 'reasoned decisionmaking.'" *Michigan v. E.P.A.*, 135 S. Ct. 2699, 2706 (2015) (citation omitted); *see also Dep't of Homeland Sec. v. Regents of the Univ. of California,* 140 S. Ct. 1891 (2020). An agency "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

"In explaining its changed position, an agency must also be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016); *see also Regents,* 140 S. Ct. 1891. Defendants' explanation for the July 6, 2020 directive fails to meet these standards.

**A. Defendants' action fails to acknowledge the impact of the directive on public health, which is a core mission of local government.**

The City of Cambridge, Massachusetts, home to both Plaintiffs, first formed a health department in 1846. Four years later, across the Charles River, a Boston

6

bookseller and demographic researcher named Lemuel Shattuck published a statistical report calling for the organization and implementation of local public health agencies that is considered to be the most groundbreaking document on public health ever published.[5] Nearly 175 years later, in the midst of the ongoing COVID-19 pandemic, local public health departments, led by dedicated and devoted public health officials, continue to form the front line in our nation's response to public health crises.[6]

Normal life has been upended during this pandemic. In many *amici's* jurisdictions, all but a few "essential" businesses, such as hospitals, grocery stores, banks, and utility companies, were forced to close, at least until public health guidelines for social distancing, cleaning, disinfecting, and quarantining could be developed. Most schools, from pre-schools all the way up to graduate schools, closed and transitioned, whenever possible, to remote learning. These orders were issued because public health is paramount to *amici*.

Undoubtedly, *amici* are desperate to see colleges successfully reopen and life return to normal. Many of the smaller college towns have experienced severe population losses, coupled with dramatic reductions in economic spending. Many college towns are experiencing wildly unanticipated impacts because of campus

---

[5] Lemuel Shattuck, *Report of the Sanitary Commission of Massachusetts - 1850*, Cambridge: Harvard University Press; 1948 (Facsimile Reprint).
[6] *See, e.g.,* MAHB, *Duties of Local Boards of Health in Massachusetts*, December 2015, *available at:* https://www.mahb.org/wp-content/uploads/2015/12/Duties-of-BOH.pdf (providing an overview of the broad legal authority of local boards of health in Massachusetts).

closures. Amherst, Massachusetts, for example, was forced to raise sewer fees on residents by 15 percent because of the decline in water usage revenues caused by a lack of student population from three shuttered colleges and universities.

But despite these common themes, there are also significant local differences among *amici* and their colleges and universities. Local conditions, including population density, dominant industries, disease prevalence, and community demographics, have a significant impact on the proper approach to public health. Health officials at the local level are deeply enmeshed in decisions on whether and how to reopen their communities; indeed, this process is largely driven *by* local public health officials, who have the most direct insight into those local conditions. As a result, no two responses to the COVID-19 pandemic are exactly the same, and each health order has been carefully crafted and is continually updated by our local health officials after consideration of the facts and circumstances as they exist on the ground.

In contrast, ICE's directive effectively sweeps away all of this careful work, without even considering it. The proposed rule is exclusively and explicitly directed to force reopening—whether or not that reopening is appropriate to protecting local public health. By forcing the hand of the colleges and universities in our communities and putting these schools to an impossible choice, DHS and ICE are threatening to upset the careful balance between *amici's* public and economic health. This can, quite literally, cost residents their lives. What harm could be more

irreparable? For these reasons, *Amici* strongly share Plaintiffs' view that this is "a policy that is as cruel as it is capricious."[7]

**B.      Defendants' action fails to acknowledge economic impacts to local government at a time when municipal budgets are experiencing severe shortfalls.**

As noted above, nearly one million students, many of whom reside in *amici's* communities, rely upon the F-1 and M-1 visa programs. Students have structured their education, employment, housing, and other life activities in reliance on ICE's guidance indicating that they can maintain their visa status during the state of emergency. New first-year students, who had to decide where to matriculate during a pandemic, have traveled across borders and over oceans to settle in *amici's* communities. In the case of new graduate students, some have even relocated their families. In the time between ICE's initial guidance and its about-face, students paid tuition, bought books and school supplies, and signed or renewed leases. Each of these decisions provides a tangible economic benefit to *amici* in the form of tax revenue, economic investment, and job creation. This economic activity is critical to many college towns around the country, including *amici*, who, as noted above, are already suffering as a result of campus closures.

Aggregated on a national scale, economic estimates show that the 1 million international students studying at colleges and universities in the U.S. contributed $41 billion to the U.S. economy and supported 458,290 jobs during the 2018-2019

---

[7] Memorandum of Law in Support of Plaintiffs' Motion for Temporary Restraining Order, ECF Dkt. No. 5 at *5 (July 8, 2020).

9

academic year alone.[8] Their dollars are spent in our communities, and the jobs that result are filled by our residents. Forcing students to self-deport or face removal threatens that economic prosperity. And this harm is compounded because *amici* are already being forced to cut budgets and services in response to the ongoing economic crisis.

Separately, *amici's* public health officials have spent countless days, incurring thousands of hours of overtime, drafting, reviewing, and producing protocols for the safe operation and reopening of government agencies, schools, and businesses. Many of these hours have been spent working closely with our local colleges and universities, carefully assisting these institutions on how best to manage the dual responsibilities of health and safety and maintenance of operations. The time and expense incurred in this process may be unilaterally undone by Defendants' new directive.

Finally, the directive fails to consider the spending impact that a mass return to campuses could have on *amici*. To date, *amici* have spent millions of dollars on the rapid development of COVID-19 testing and contact tracing. And demand for both, in many jurisdictions, still outstrips supply. Last Monday, the City of Los Angeles considered placing limits on who could get tested for COVID-19, despite the fact that the city increased capacity from 20,000 to 38,000 tests per day the same week. Asking thousands of students to stop their learning from the safety of their

---

[8] NAFSA, *Economic Value Report for 2019*, November 18, 2019, *available at* https://perma.cc/H9P9-UBGQ.

homes and come together on campus this fall will surely result in new cases being transmitted because of a lack of social distancing. This will require increased spending on testing and contact tracing, and on underlying health care services at public hospitals systems, which are also run by some *amici*.

## CONCLUSION

The stated rationale for ICE's July 9, 2020 directive is to get colleges and universities "to reopen"[9] in the midst of spiking COVID-19 cases across the country. But DHS and ICE have failed to provide any discussion, consideration, or explanation about the harms that will flow from this directive and *amici's* reliance the agencies' previous guidance that was supposed to govern "for the duration of the emergency." Such a failure, at a minimum, "raises doubts about whether the agency appreciated the scope of its discretion or exercised that discretion in a reasonable manner," *Regents*, 140 S.Ct. 1891 at *49, and renders the decision arbitrary and capricious in violation of the Administrative Procedure Act. Accordingly, this Court should grant Plaintiffs Motion for a Preliminary Injunction.

---

[9] Bowden Article, supra n. 1.

**Respectfully submitted,**

| | |
|---|---|
| *Amicus Curiae*, CITY OF LOS ANGELES, | *Amicus Curiae*, CITY OF BOSTON, |
| Michael N. Feuer,<br>City Attorney | Eugene O'Flaherty,<br>Corporation Counsel |
| | By his attorneys, |
| /s/ Michael J. Dundas<br>Michael J. Dundas, *pro hac vice* pending<br>Danielle Goldstein, *pro hac vice* pending<br>200 North Main Street,<br>City Hall East, Suite 800<br>Los Angeles, California, 90012<br>(213) 978-8130 | /s/ Adam Cederbaum<br>Adam Cederbaum, BBO No. 661549<br>adam.cederbaum@boston.gov<br>Sean Chen, BBO No. 678110<br>Sean.chen@boston.gov<br>One City Hall Square, Room 615<br>Boston, MA 02201<br>(617) 635-4034 |

## ADDITIONAL COUNSEL FOR AMICI CURIAE

| | |
|---|---|
| William G. Kelly, Jr.<br>Corporation Counsel<br>24 Eagle Street<br>Albany, Ny 12207<br><br>*Attorney for the City of Albany, New York* | Esteban A. Aguilar, Jr.<br>City Attorney<br>P.O. Box 2248<br>Albuquerque, NM 87103<br><br>*Attorney for the City of Albuquerque, New Mexico* |
| James L. Banks, Jr.<br>City Attorney<br>301 King Street<br>Alexandria, VA 22314<br><br>*Attorney for the City of Alexandria, Virginia* | Anne L. Morgan<br>City Attorney<br>PO Box 1546<br>Austin, TX 78767<br><br>*Attorney for the City of Austin, Texas* |
| Farimah F. Brown<br>City Attorney<br>2180 Milvia Street, 4th Floor<br>Berkeley, CA 94704<br><br>*Attorney for the City of Berkeley, California* | Nancy E. Glowa<br>City Solicitor<br>795 Massachusetts Avenue<br>Cambridge, MA 02139<br><br>*Attorney for the City of Cambridge, Massachusetts* |
| Juan A. Gonzalez<br>Chief Counsel<br>1100 East Monroe Street<br>Brownsville, Texas 78520<br><br>*Attorney for the County of Cameron, Texas* | Mark A. Flessner<br>Corporation Counsel<br>30 N. LaSalle Street, Suite 800<br>Chicago, IL 60602<br><br>*Attorney for the City of Chicago, Illinois* |
| Zach Klein<br>City Attorney<br>77 N. Front Street, 4th Floor<br>Columbus, OH 43214<br><br>*Attorney for the City of Columbus, Ohio* | Jessica M. Scheller<br>Chief; Advice, Business &<br>Complex Litigation Division<br>69 W. Washington, 32nd Floor<br>Chicago, IL 60602<br><br>*Attorney for Cook County, Illinois* |
| Barbara J. Doseck<br>City Attorney<br>101 West Third Street<br>Dayton, OH 45401<br><br>*Attorney for the City of Dayton, Ohio* | Laura Spector-Morgan<br>Mitchell Municipal Group, PA<br>5 Beacon St. E #2<br>Laconia, NH 03246<br><br>*Attorney for the Town of Durham, New Hampshire* |

| | |
|---|---|
| Howard G. Rifkin<br>Corporation Counsel<br>550 Main St., Room 210<br>Hartford, CT 06103<br><br>*Attorney for the City of Hartford, Connecticut* | Eleanor M. Dilkes<br>City Attorney<br>410 East Washington Street<br>Iowa City, IA 52240<br><br>*Attorney for the City of Iowa City, Iowa* |
| Jennifer Vega-Brown<br>City Attorney<br>700 North Main<br>Las Cruces, NM 88001<br><br>*Attorney for the City of Las Cruces, New Mexico* | James E. Johnson<br>Corporation Counsel<br>100 Church Street<br>New York, NY 10007<br>*Attorney for the City of New York, New York* |
| Barbara J. Parker<br>City Attorney<br>One Frank H. Ogawa Plaza,<br>6th Floor<br>Oakland, CA 94612<br><br>*Attorney for the City of Oakland, California* | Yvonne S. Hilton<br>City Solicitor<br>City-County Building<br>414 Grant Street<br>Pittsburgh, PA  15217<br><br>*Attorney for the City of Pittsburgh, Pennsylvania* |
| Susana Alcala Wood<br>City Attorney<br>915 I Street, Fourth Floor<br>Sacramento, CA. 95814<br><br>*Attorney for the City of Sacramento, California* | Lyndsey M. Olson<br>City Attorney<br>400 City Hall and Court House<br>15 West Kellogg Boulevard<br>Saint Paul, Minnesota 55102<br><br>*Attorney for the City of Saint Paul, Minnesota* |
| James R. Williams<br>County Counsel<br>70 W. Hedding St., East Wing, 9th Floor<br>San José, CA 95110<br><br>*Attorney for the County of Santa Clara, California* | Peter S. Holmes<br>City Attorney<br>701 Fifth Avenue, Suite 2050<br>Seattle, WA 98104<br><br>*Attorney for the City of Seattle, Washington* |
| Francis X. Wright, Jr.<br>City Solicitor<br>93 Highland Avenue<br>Somerville, MA 02143<br><br>*Attorney for the City of Somerville, Massachusetts* | Joel B. Bard<br>KP Law, P.C.<br>101 Arch Street<br>Boston, MA 02110<br><br>*Attorney for the City of Amherst, Massachusetts* |